LAND, J.
The plaintiff, a corporation organized under the laws of this state, has instituted the present suit against defendant, a commercial copartnership composed of E. S. Duck, L. N. Duck, A. J. Sessions, and J. B. Phillips, domiciled in the parish of Rapides, to recover against said copartnership and its members in solido a judgment for the sum of $5,012.16, as damag’es for the alleged breach of a certain contract of date August 17, 1917, by the terms of which defendant bound itself to deliver to plaintiff company 500.000 feet of log-run Tupelo lumber and 250.000 feet of log-run cypress lumber. Plaintiff alleges that defendant did operate its mill and produce the lumber called for by said contract, but made other disposition of the same, and that by defendant’s breach of said contract plaintiff company has been deprived of the legitimate profit on said lumber to the amount herein claimed. Plaintiff company alleges that defendant delivered to it only 150,636 feet of Tupelo lumber, and breached said contract by failing and refusing to deliver the remaining 349,364 feet, and by failing ánd refusing to deliver any of the 250,000 feet of cypress lumber. Defendant, after pleading the exception of no cause of action in its answer, charges that plaintiff company was in default under the contract:
(1) Because plaintiff did' not pay for this lumber in accordance with the terms of the contract, requiring cash, less discount of 2 per cent, upon receipt of shipping papers.
The instances of default by plaintiff as to cash payment on the ten shipments appearing on page 78 of the transcript all occurred between October 30, 1917, the date the defendant the Duck Lumber Company shipped its first ear, and December 12, 1917, the date of the shipment of the tenth car, no payment having been made in this instance until February 26, 1917. On the other nine shipments the greater portion of the cash price was paid promptly, and the balance in short delay afterwards. The Duck Lumber Company accepted all of these payments, notwithstanding the default now alleged, and, as shown by plaintiff’s exhibits, waived the previous default as to these payments, by accepting orders and continuing to ship lumber to plaintiff afterwards under the contract on the same basis of cash payment less 2 per cent, discount. This waiver is clearly *441 proven by tbe letters of tbe Duck Lumber Company to plaintiff of dates May 7, May 16, and May 28, 1918, and by letter (of plaintiff to the Duck Lumber Company of date May 20, 1918, which were written after the defaults now complained of.
The default as to payment on car 8Y99 as per order 624 is specially referred to in the letter of the Duck Lumber Company to plaintiff of date June 3, 1918, and is clearly waived by letter of the Duck Lumber Company to plaintiff of date June 5, 1918, which reads as follows:
“We are in receipt of your letter of the 3d. Will ship one car of 5/4 on your order 1055-B the .latter part of the week.”
(2) Defendant alleges that no inspectors were furnished by plaintiff, as stipulated in the contract, as an excuse for not shipping lumber.
A letter of date January 22, 1918, written by plaintiff to the Duck Lumber Company, contains the following statement:
“In accord with our understanding over the telephone some time ago, it will be entirely satisfactory to us to have your inspector load out this lumber. However, should you require ours, let us know when you want him, and we will arrange to let you have him.”
This' letter was written in reference to shipment on. forwarding orders from plaintiff then on hand and held by defendant company. It is admitted by E. S. Duck in his testimony that after January 1, 1918, the Duck Company hired a man to inspect for them, and that this released the plaintiff, the Alexandria Cooperage & Lumber Company, of their obligation under the contract to send their inspector to take up the lumber.
(3) That plaintiff only ordered lumber shipped to embargoed points, and that plaintiffs knew that defendant company would be unable to comply because. the federal government refused to permit shipments to such places designated by plaintiffs.
On February 27, 1918, the balance of lumber due plaintiff on order 624 was 349,364 feet of log-run Tupelo, and, on order No. 625, 250,000 feet of log-run cypress. In a letter of this date a demand was made on defendant company for the shipment of this lumber, and an offer also made to send plaintiff’s inspectors, if defendant company desired' it. Mr. Duck was in error when he stated in his testimony that he received no orders after December 12, 1917, until May 13, 1918. The orders for shipment furnished by plaintiff to defendant company appear at page 56 of the transcript, nine in number, destinations, Chicago, Kansas, City, Huntington, W. Va., St. Louis, and Brooklyn, N. X. The date of three of these orders is December 21, Í917; one January 3, 1918; two January 28, 1918; two May 13, 1918; and only one November 6, 1917, prior to December 12,1917. The Brooklyn order was finally canceled during February or 'March, 1918, but had been on defendant company’s files since November 6, 1917. No other orders were canceled.
Defendant complains that the orders to Huntington, W. Va., were embargoed. Plaintiff shipped a number of orders to that point from Clear Water, La., on the R. I. Railroad, about six miles south of Lecompte, on August 8 and 12 and December 14, 1918, These were private, and not government, orders. Clear Water is four or five miles from the Duck Lumber Company, and the plausible and natural route from defendant’s mill to Huntington, W. Va., is in connection with the Rock Island Railroad at Lecompte.
As shown by Plaintiff’s Exhibit DD, plaintiff shipped private orders for lumber over the Alexandria & Western Railroad from De Witt, La., routed over Rock Island Railroad, to Huntington, W. Va., April 19, 1918, April 30, 1918, and May 9, 1918.
Defendant failed to prove the other points to which lumber was to be shipped under orders held by it to be embargoed. This defense is therefore not well founded.
*443 (4) Defendant contends that no orders for cypress lumber were furnished by plaintiff. Defendant company never informed plaintiff that they had any cypress ready for shipment. In a letter of date February 27, 1918, from plaintiff to defendant, we find the following demand for the cypress lumber made on defendant:
“While we did not in the beginning contemplate shipping this lumber to Alexandria, to avoid the possibility of delays or future misunderstanding, we now ask that you load and ship promptly the balance due on these orders to us at Alexandria. According to our record, you still owe us, on our order No. 624, 349,364 log-run Tupelo, 150,636 feet having been shipped to date; on order No. 625, 250,000 feet log-run cyprdlss. There have been no shipments made against this order to date. If you wish our inspector to come to your siding to measure andünspect this lumber as shipped, advise us, and we„ will send him down. Kindly let us hear from you as promptly as possible advising about when you will begin shipment, as it will be necessary for us to make some little changes here at our yard to take in the stock.”
The defendant did not call on plaintiff for an inspector, or ship in accordance with that letter.
On page 27)7 of the transcript we find from the re-examination of Mr. Patterson that-after the blanket order referred to in letter of date February 27, 1918, plaintiff had an understanding with defendant that it would go ahead and carry out the terms of the contract, as it would be more convenient ■ for defendant to ship orders to other places, and that as a result plaintiff sent defendant order of May 13, 1918, for shipment of Tupelo gum lumber to Huntington, W. Va. Defendant was left the option, however, either to ship his orders direct, or to pile the lumber on the ground at Tioga, La., and plaintiff would take it there. Defendant failed to comply with either demand. Mr. Patterson testified:
“There was never a time that Duck didn’t have special shipping orders from us covering the lumber bought under this contract, except as applies to the cypress, and we were never notified that they had any of that ready.”
Defendant not only failed to .ship on special orders the 349,364 feet of 'Tupelo gum lumber, after demand, but failed also to ship the 250,000 feet of cypress, as required by the contract between the parties. If this cypress was on hand, it was the duty of defendant to have notified plaintiff that it was ready for shipment.
(5) Defendant denies in article 5 of its answer that it ever breached said contract by failing or refusing to deliver the remaining lumber called for by the contract. In article 11 of the answer it is admitted:
“That respondents refused any longer to com-' ply with their contract, because plaintiff breached theirs with reference to the payment of the purchase price of the lumber,” etc.
As the testimony shows that this failure to pay cash, less discount of 2 per cent., for the lumber, was'waived and condoned by defendant company accepting payment, although a part of the cash price was paid tardily, and as there was an agreement thereafter on the part of defendant with plaintiff to continue to execute the contract between the parties, it cannot be seriously argued that such alleged defaults can be now urged as a bar to the right of recovery of damages by plaintiff for the breach of the contract.
The plaintiff is therefore entitled to recover damages. Under the contract between the parties the agreed price for the best grade to be paid the defendant lumber company was $22, and $18, $14 and $8 for the next three lower grades respectively, making $15.50 the average price for the average grade. According to plaintiff’s witness Brenner, we' find a profit of $7.27% a thousand, by the same method, of 'calculation. It would be evidently inequitable to allow plaintiff to claim the grades from which it would have made the largest profit. Plaintiff *445 is therefore entitled to a profit of $7.27% per thousand, based on the fair average price of $15.50 per thousand. The profit on 349,364 feet of Tupelo gum at $7.27% per thousand would be $2,539.65 and on 250,000 of cypress would be $1,818.75, or a total of $4,358.40.
The consideration of the exception of no cause of action is dispensed with in plaintiff’s brief. The reeonventional demand of defendant was properly rejected. Defendant was responsible for all shipping weights over 2,800 pounds per 1,000 feet for Tupelo lumber, railroad weights to apply- -Defendant did not prove the railroad weights were wrong, and consequently it must stand the loss.
The judgment of the lower court rejected plaintiff’s demand and the reeonventional demand of the defendant.
It is therefore ordered, adjudged, and.decreed that,the judgment appealed from be amended, and that there be judgment in favor of plaintiff against the E. S. .Duck Dumber Company, a commercial copartnership, and against E. S. Duck, D. N. Duck, A. J. Sessions, and J. B. Phillips, the individual members composing said partnership, in solido, in the sum of $4,358.40, with legal interest thereon from June 3, 1918, and it is now ordered, adjudged, and decreed that said judgment, as amended, be. affirmed, at the cost of defendant partnership.
O’NIELL, C. J., dissents.
OVERTON, J., recused.